[LOCAL LAW. CHANCERY.]

## MILLER and Others v. KERR and Others,

A warrant and survey authorize the proprietor of them to demand the legal title, but do not, in themselves, constitute a legal title: until the consummation of the title by a grant, the person who acquires an equity holds a right, subject to examination.

Where the register of the land office of Virginia had, by mistake, given a warrant for military services in the *Continental* line, on a certificate authorizing a warrant for services in the *State* line, and in recording it, pursued the certificate, and not the warrant, it was held that this Court could not support a prior entry and survey, on a warrant thus issued by mistake, against a senior patent.

Where the plaintiffs seek to set aside the legal title, because they have the superior equity, it is consistent with the principles of the Court to rebut this equity by any circumstances which may impair it: and the legal title cannot be made to yield to an equity founded on the mistake of a ministerial officer.

THIS cause was argued and determined at the last term, but omitted to be reported.

Mr. Justice Todd delivered the opinion of the Court.

On the 29th of May, 1783, Seymour Powell, heir of Thomas Powell, obtained a military land warrant from the Register's office in Virginia, No. 679, for 2663⅔ acres of land " due in consideration of services for three years, as a lieutenant of the Virginia Continental line, agreeably to a certificate from the Governor and Council, received into the land office." A part of this warrant was entered in the Military District reserved for the officers and soldiers of the Virginia Continental line, on the 16th of June, 1795; and, on the 30th of October, 1796, 789 acres, part thereof, was surveyed in the name of the said Seymour Powell, which survey was on the 1st of March, 1797, recorded in the office of the surveyor-general. On the 10th of July, 1800, Justus Miller purchased this land, and took an assignment of the entry and survey, and obtained a patent therefor in February, 1808.

John Neville made an entry on the same land in May, 1806, on a military land warrant, for services in the Virginia Continental line; and his heirs, the respondents, obtained a patent therefor on the 30th of April, 1807.

They have brought an ejectment against the heirs of Justus Miller, who having, as they say, the elder equitable, though the junior legal title, have filed this bill to enjoin proceedings at law, and compel Neville's heirs to convey the legal title to them.

In their answer, Neville's heirs assert that Thomas Powell never served in the Virginia Continental

line, but that his service was performed in the State line, and that the certificate of the Governor and Council, on which the warrant was issued, was expressed to be given for services in the State line, so that the warrant issued fraudulently, or by mistake. They farther insist, that as the officers of the State line could not enter their warrants in the district reserved for the Continental line, the plaintiffs ought not to be permitted to avail themselves of a title founded in mistake, to defeat their legal title.

The testimony taken in the cause shows, that the records of the office of the Executive Council of Virginia have been examined, and that no certificate has ever been granted to Seymour Powell, as the heir of Thomas Powell, for services in the Virginia Continental line, but that a certificate was granted to him for military services for three years in the State line.

In the land office, too, records are to be preserved of all the warrants which issue, and of the certificates on which they issue. This office also has been searched, and no certificate is found of any military service rendered by Thomas Powell, in the Virginia Continental line, nor is there on record any warrant for such service ; but there is a certificate given to Seymour Powell, for his military services as a lieutenant in the State line ; and a warrant on record for those services, bearing the same date and number with that on which the land now in controversy was entered.

There is no proof, and no reason to believe, that Thomas Powell ever performed any military ser-

vice in the Virginia line on Continental establish-ment.

It is, then, apparent that the register of the land office has, by mistake, given a warrant for military services in the Continental line, on a certificate authorizing a warrant for service in the State line; and that, in recording it, he has pursued the certificate, and not the warrant.

The question is, can this Court support a prior entry and survey, on a warrant thus issued by mistake, against a senior patent?

It has been urged, on the part of the appellants, that the title of Thomas Powell, for services in the State line, is precisely to the same quantity of land as if those services had been rendered in the Continental line; his claim on the State of Virginia is the same. That, had the warrant been properly issued, it might have been satisfied in the district set apart for the officers and soldiers of the State line, which district is in the State of Kentucky, and can no longer be appropriated by the holders of warrants for military services in the Virginia State line. Thus the rights under Powell are sacrificed, without any fault of his, in consequence of a mistake committed by the register of the land office. They say that they are purchasers, without notice, of a title apparently good; and ought not to be affected by the mistake of a public officer. They insist that in the hands of a purchaser, a warrant ought to be liable to no objection founded on circumstances anterior to its date.

There is great force in these arguments; and, if the military district had remained a part of Virginia until Mr. Powell's warrant was entered, they would, perhaps, be unanswerable. But, in 1784, this district, with all the territory claimed by Virginia north-west of the Ohio, was ceded to the United States, with a reservation in favour of the legal bounties of the Virginia troops on Continental establishment only. There is no reservation whatever in favour of the bounties in land, to the State troops. Provision for them was made elsewhere.

After this cession, no title could be acquired under Virginia, which was not included within the reservations. The same principle was asserted by this Court in the case of *Polk's lessee* v. *Wendell,*[a] and is, we think, too clear to be controverted. The great difficulty in this case consists in the admission of any testimony whatever, which calls into question the validity of a warrant issued by the officer to whom that duty is assigned by law. In examining this question, the distinction between an act which is judicial, and one which is merely ministerial, must be regarded. The register of the land office is not at liberty to examine testimony, and to exercise his own judgment respecting the right of an applicant for a military land warrant. He was originally directed to grant warrants to the officers or soldiers " producing to him a certificate of their claims respectively from the Commissioner of War, and not otherwise." When the office of Commissioner of War was put

1822.

Miller
v.
Kerr.

*b* 5 *Wheat. Rep.* 293,

1822.

Miller
v.
Kerr.

down, this duty devolved on the Executive Department, whose certificate was as obligatory on the register, as that of the Commissioner of War had been. The question of right then was tried before the Executive Council, and the register is a mere ministerial officer carrying the judgment of the Executive into execution by issuing his warrant in pursuance of their certificate. This certificate is filed and preserved in the office as the document on which the warrant issued. It is as much a part of the record as the warrant itself.

A warrant and survey authorize the proprietor of them to demand the legal title, but do not, in themselves, constitute a legal title. Until the consummation of the title by a grant, the person who acquires an equity holds a right subject to examination. The validity of every document is then open to examination, whatever the law may be after the emanation of a patent.

If this be correct, and the objection to the warrant delivered to Mr. Powell can be considered, he is shown, by the clearest testimony, to be the holder of a warrant issued by mistake. As an officer in the State line, he was not entitled to a warrant which could appropriate lands lying in the military district northwest of the Ohio.

As the plaintiffs are endeavouring to set aside the legal title, because they have the superior equity, we think it consistent with the principles of the Court to rebut this equity by any circumstances which may impair it.

The case is a hard one on the part of the plaintiffs; and they may have strong claims on the liberality and justice of the United States, or of Virginia; but we do not think the legal title can be made to yield to an equity founded in the mistake of a ministerial officer.

Decree affirmed, each party paying his own costs.