...Mr. Chief Justice'MarsUAnn
 

 delivered the'opinion of" the ' Court.— -
 

 Tliis is an ejectment brought-by the plaintiff in error, in the Court of .the United States for the seventh circuit'and ¡district of Ohio, to recover a tract of land lying in. the military district.
 

 The plaintiff offered, as his title, a patent from .the government of the-United States* bearing date the 10th of November 1824..
 

 The defendants then introduced a certified copy of an entry and'- survey of the. lands in controversy, sworn to by Richard-G. Anderson, the principal surveyor of the Virginia military-district; the survey purporting to haye been made on the 10th of October 1796, and recorded on the 15th of April 1812, founded on an entry, .bearing date the. 19th. day of July 1796,for 553“ aCres of lan^ in the name of Nathaniel Massie, assignee; numbered 2744, .and founded upon Léven Powell’s warrant, for 2000 acres, NP..-3398, andjThojmas.Goodwin’s warrant for 200 acres, No. 1930. It whs-admitted,, that the defendants were purchasers'frOm Massie, prior,to the year 1796; entered into possession of;thé,premises under the said purchases, and.received Recon-veyance from him, before the year.1812. It was.also admitted,' that the plaintiff’s.'eñtfy. was- made on the 10th of June 1824, and his. survey on the 20th of the same month; ,
 

 The. defendánt relied on this survey, and on thé proviso of thé Act passed the 2d . of March 1807, entitled An Act to extend- the timé for locating Virginia military warrants,. &c._” This Act annexes ¡the following proviso to the permission it
 
 *633
 
 grants t.o obtain warrants for military service, and to make locations within the military district: — “ Provided, that no locations as aforesaid, within the aforesaid mentioned tract, shall, after the passing of this Act, be made on tracts of land for which patents had previously been issued, or which had been previously surveyed, and any patent which may,.nevertheless, be obtained for land located contrary to the provisions of this section, shall be considered as null, and void.”
 

 To show that the survey set up by the defendants was .not protected by the proviso in the Act of Congress, the plaintiff offered to prove, that the warrants on which it was-founded were satisfied before that entry was made. ■ For this purpose, he offered in evidence, two entries, amounting to 1597 acres, on Powell’s warrant, made in Powell’s name the 30th of December 1791, surveyed by Massie on- the 3d of January 1792, thé survey recorded on the 10th of the same month; plots and Certificates taken from the office by Massie, the JLlth of July Í795, and a patent issued to him on the 19th September 1799; .also an entry for 403 acres, the residue. of Powell’s warrant, made in the name of Nathaniel Massie, on the 27th of January 1795, surveyed on the 27th December 1796, the survey recorded on the 9t-h of Juné Í797; the plot and certificate, together with'1 the warrant supposed to be satisfied, taken out of the .office by Massie, on the 14th of June 1797, and a patent issued to hisliéirs on the 3d of December 1814.
 

 . He also offered in evidence, an entry for hity acres made on Thomas Goodwin’s warrant, in the name of John Walkerj-as;-signee, the 17th of September 1795, surveyed the 30th' of March 1820, and patented on the 19th of November 1825; also an entry for .150 acres, the- residue of the said warrant,, made on'the 16th of June 1795, in the name of the said Massie, surveyed on the 1st of July in the same year; survey recorded the 10th of .the same month, and a.patent issued to-Massie on the 15th of February 1800.
 

 The plaintiff also offered the deposition of Richard C. Anderson, the principal surveyor, who deposed, that the survey of 553 acres, which was given- in evidence by the defendants,. was illegally made, and admitted by him ignorantly and improperly, to record; and that he had marked the Same on the record of his office, “error;” but-he does not state the time when this mark was made. He adds, that he had refused to grant ,a plot, and certificate of survey,' being of opinion that the whole of the warrants had been previously satisfied.
 

 The defendants moved the Court .to reject the authenticated copies, and testimony aforesaid, as inadmissible evidence; which motion was. granted by the Court, upon the ground that the Act of Congress confirmed the survey of the defendants,
 
 *634
 
 And annulled the plaintiff’s patent. Ani exception was taken, to this opinion; 'A verdict and judgment having been given for the defendants, the plaintiff has brought .the cause into <his Court by. writ of error. .
 

 ' Two points have been made by the counsel for the plaintiff. They contend— '
 

 1. That Congress could not; rightfully,-limit the time within which military warrants should be located and surveyed.
 

 2. That the Act of Congress,, prohibiting locations on- lands, already,surveyed, and declaring. any patent which .should be issued on- such' survey .void, does-not .comprehend, the- survey in this case.
 

 The first point to be considered,' is' the objection to. the' limitation Of . time prescribed» by Congress, within which the military warrants granted by Virginia should be located; The plaintiff contends that,nó limitation can be.fixed.
 

 In the October session of 1783, the legislature of-Virginia passed án Act: ceding to Congress the . territory claimed by that' state, lying north-west of the river .Ohio, under certain' reservations ¿nd conditions, in the Act mentioned. One of these was, “ That in case the quantity oi;good land on the>outh-east aide of the Ohio, upon the Waters of the Cumberland river, and- between the Greejn river and Tennessee, which.Has been reserved by law for the Virginia troopls, on the continental establishment, should, from the North Carolina line bearing in farther upon the Cumberland lands than was expected, prove insufficient for their- legal bounties; -the deficiency should be made up to. the said'troops in good lands to be laid, off between:'the. rivers Scioto ánd Little Miami, on thé north-west side of.the. river Ohio, -in such.proportions as have' been engaged to them by the laws of Virginia.”
 

 This is not a'reservation of the whole -tract of country lying between the rivers Scioto, and Little Miami. It is a reservation of only so much Ofit, as may be necessary to make up. the deficiency of good lands in- the country set apart for the officers and soldiers-of the Virginia.line, on .the continental, establishment, on'the south-east side, of the Ohio.. The reservation is made, in terms which.indicate .some doubt respecting the existence of the deficiency, and an opinion that it will not he very considerable. Subsequent -resolutions of the Virginia legislature, have added very much to, the amount- of these bounties; The residue of the lands are ceded to the United States,-for the benefit of. the said states, “ to be considered as a common-fund Sir the .use and benefit of such of the United States, as hive become, or shall become, members bf. the confederation or federal alliance of the said states, yirginia inclusive, according to their usual respective proportions Si the general charge and .
 
 *635
 
 expenditure ; and shall be faithfully,
 
 md bona fide,
 
 disposed of ' for' that purpose, and for "no other use or purpose whatever.” ’’
 

 The government of the United States then received this, ter- ’’ rj-tpry in trust, not only for the Virginia troop? on'the continental establishment, but also for the use and benefit of the members of the confederation; and this' trust is to be executed,44 by-a •faithful and
 
 bonafide’’
 
 disposition of the land, for thát purpose.
 

 .. We cannot take a retrospective view of the then situation of: the United States, without perceiving the importance which must have been attached to this part of the trust. A heavy foreign and domestic debt, part of the, price paid for independence, pressed upon the government; and the vacant lands constituted the only certain fund for its discharge. Although; then;, the military rights constituted the primary .claim on the trust, that claim was, according' to the intention of the parties, so tp be satisfied as still to keep in view that other object which was also of vital interest.' This was to be effected only*, by prescribing, the' time within which the lands.to be appropriated by these claimants, should be separated, from the general mass, so as to enable the government to apply the residue, which it was then supposed would be considerable, to the other purposes'of the trust. The time ought certainly to be liberal. .But Unless some time might be prescribed, the other purposes, of the trust would be totally, defeated; and the surplus land remain a wilderness.
 

 This reasonable,.and, we think, necessary,construction, has' met with general acquiescence. ' Congress has acted upon it,’ and has acted in such a manner as not to excite complaint’s,-cither in the state of Virgiiiia, or the holders of military war- ' rants.
 

 If the 'right existed to prescribe a time within which military warrants should be located,' the right to annex conditions to ils extension follows as a necessary consequence. The. condition. annexed ‘ by Congress has been calculated for-the sole purpose of preserving the peace'and quiet-of the inhábitants», by securing .titles previously acquired. We are to inquire, ' whether the- case of the defendants is within it.
 

 2. It has been contended, that the prohibition in the Act of the 2d of March 1807, to make locations on lands which had been previously surveyed, .does not extend to the survey of the defendants,,.because that survey was made on warrants which had been previously satisfied^ The word 44 survey,” as-used in the law, .is not satisfied by the mere circumstance that a chain. • has followed a compass round a particular piece of..ground; but requires that'it should be made in virtue of .a. warrant'for the purpose of appropriating land, to which the holder of that warrant is entitled by law. The warrant can: be an
 
 authority
 
 
 *636
 
 for surveying and appropriating so much land oiily, as it professes to grant; and this necessary limitation, could it require confirmation, is confirmed by the Act of the 9th of Julie 1794, which regulates the manner of issuing patents on surveys for less than the whole quantity of land specified in the warrant. That Act contains a proviso, “That no letters patent shall be issued for a greater quantity of land than shall appear to remain dueon such warrants.” As patents had issued foouthe whole quantity of land specified in the warrants on which the survey of the defendants professes to be founded, previous to the entry of the plaintiff, no patent could at that time have been obtained by the defendants; and therefore, the saving in the statute could not have been intended for their survey.
 

 . ■ The Court has felt the weight of 'this argument, and has: bestowed upon it the most deliberate, consideration.
 

 The Act of the 23d of March 1804, is the first Act which prescribes the time within whi^h the holders of military warrants shall make their locations and-'surveys. That Act requires that the locations shall be made within" three years from its passage. ’ On the 2d of March 1807, the first Act was passed giving a farther time of three years for making locations, and of five years for returning surve|s. -. This Act qontain's the proviso of which the defendants claim the benefit. In every Act which has been since passed, prolonging the time for making entries and returning surveys on military warrants,' the same proviso has been introduced. It was.enacted in March 1807, and has continued in force ever since. It constitutes a limitation to the right given by all subsequent laws, to locate and survey military warrants.
 

 If it be conceded, that this proviso was not intended for the protection of surveys which wer'p in'themselves absolutely void, it must be admitted th.at it was intended to protect those which were defective, and which miglit be avoided for irregularity. If this effect be denied to the proviso, it ‘ becomes' itself a nullity, We must therefore inquire, to. which class, the survey of the defendants belongs.
 

 Nathaniel Massie was probably'the proprietor of Leven Row-ell’s whole wárrant of 2000 acres, certainly of 403 acres, part thereof, when he made the entry under which the defendants claim. ■ He was also the proprietor of 150 acres, part of Thomas Goodwin’s warrant. We say-he-was .'at that, time the proprietor.of those warrants, because he .made an • entry for' 403 acres, part of Powell’s warrant,' in his own name, on the 27th of January 1795, and an entry for 15Ó acres, part of Goodwin’s warrant, in -his own name, on. the 16th óf Juñe'1795;. both which entries were afterwards surveyed and patented for.himself-an'd his-heirs. These two eptries amount to 553 acres, the
 
 *637
 
 quantity for which the entry sold to the defendants was. made. Being thus the proprietor of both these entries, and of the warrants on which they were founded,( he makes an entry in his own name, on the 19th July 1796, for the same quantity of 553 acres., ' This last entry, the warrants being satisfied, if.the previous entries remained in force,, was inconsistent with the two preceding entries. It ought not to have been made by him nor allowed by the principal surveyor, unless tho.se preceding entries were withdrawn. According to the usage of the office, as stated in Taylor’s Lessee
 
 vs.
 
 Myers, 7
 
 Wheat.
 
 23, Massie hid the power to withdraw them. Had he expressed to the Survey- or General, his wish to withdraw them, and to .re-enter the-warrants, his wish would, not have been opposed. But, without, expressing this wish, so. far as the case shows, be made the entry in question. This act was lawful-if the two preceding entries were removed; unlawful.if they stood; The officers of the government did their duty, if this entry displaced the two which preceded it; but violated their duty, if it had not this effect. Unquestionably, in an office regularly kept, the withdrawal of an entry ought io appear upon thd'record,; but had this office.been regularly kept, the last entry could not have been allowed, unless accompanied by a withdrawal of those which were inconsistent with it.
 

 Had Nathaniel MaSsie transferred his right to the two last preceding entries, previous to the time of making this for the defendants, so that the contest was between purchasers;-.the prior entries could not have been affected by his subsequent act. But he had not transferred -his right' to them; the.contest, had one arisen, wbuld not have.been between purchasers, ■but between a purchaser, and the wrongdoer himself. Can .it be doubted how such a controversy would have terminated ?. Nathaniel Mássie, being the, proprietor of -553 acres of military land warrants, enters, them on. lands which they might lawfully appropriate; afterwards, possessing a.perfect right to cancel this.entry, and. locate the warrants elsewhere, he.does locate ■them elsewhere, and sells this location to a purchase*1 for- a valuable consideration; without notice. '.It cannot, we think, be doubted that a Court of Equity would at any time, while Massie remained the owner- of the prior.entries, relieve such pur- . chaser,. by annulling the entries which obstructed the title of-the purchaser; or decreeing that Massie should withdraw them, or enjoining him from carrying them into grant. .Had the plot ánd certificate of survey, with the accompanying vouchers required by law, been presented by the defendants, previous to the .proceedings taken by Massie to obtain patents for himself, a grant would have issued to the defendants! Their survey then, was not an absolute nullity. It might have been supported in a.
 
 *638
 
 Court of'Equity; and had the defendants, instead of trusting» as they probably did, to Massie for a title, been diligent in the pursuit: of it' themselves, they might, perhaps, have obtained . one from the United States. '
 

 - This was not a fictitious,' but an actual survey, made as early as the year 1796, by a regular officer, for one owning the warrants on which the entry purports to be made, and having at the time»full power to give compléte validity both to the entry and survey.. No circumstance' attended them which could enable a. purchaser to detect the latent defect. The survey having every • appearance of- fairness and validity given- to it by the regular officers of the government, is sold, at least as early as the year 1796, to persons who take possession of it, and have retained possession ever since. Why should not the proviso in the Act of Congress apply to the case ? The words taken literally, certainly apply to it., “No locations shall be made on tracts of land for which patents had previously beén issued, or which had been previously surveyed.” Had a patent been previously Issued on'this very survey, this contest could never have arisen. Does the language of the clause, furnish any distinction between the patent and the survey? If.it be a survey, there is none. -Lands surveyed ¿re as completely withdrawn, as lands patented from t subsequent location.'
 

 It cannot be said; that the prohibition was intended only for valid and regular surveys. -They did not require legislative aid. It -was known that the military district abounded with defective entries and surveys, which might be'defeated by entries made in‘more quiet times, with better knowledge, of the requisites .Of law* This clause was introduced for their protection. It was,, most truly, an enactment of repóse. A sur- . vey made by the proper officer,' professing .to be made on real' warrants^ bearing upon its face every mark of.regularity and validity, presented a barrier to the .approach of the. location, which he was hot permitted to pass; which he Was not at liberty to examine. Had the survey been made on.land not. previously located, it would have been as destitute of validity as it is now supposed to be. Yet it is admitted, tfiat though it should not cover one fqot of the location, the land surveyed could not be appropriated by, a subsequent locator. , The illegality of the survey would not have been examinable by him.
 

 We cannot draw the distinction between such a case and this. Congress does not appear to have drawn it They are' both surveys made by the regular officers on military warrants.
 

 It may be,, that the defendants may never be able to perfect' .their title,' The land may be yet-subject,to the disposition of' Congress. It is enough for the present cáse to say, that as we
 
 *639
 
 understand the Act of Congress, -it was not liable to location when the plaintiff’s entry was made. .
 

 We have not noticed the testimony of the principal surveyor, because we do not think it affects the case., The word “error” was written on the face .of the plot, we know not when; certainly. after it was recorded, and after the Certificate exhibited by the defendant at .the trial had been given. It manifests his opinion that he acted improperly in admitting the survey to record, but that opinion cannot affect the case. The great original impropriety was in omitting to require that the previous entries made in the name of Massie, should be withdrawn, expressly, when this entry was made.'
 

 This case is not, we think,-like Taylor’s Lessee vs. Meyers, reported in’
 
 7
 
 Wheat. 23. In that case the owner had openly • abandoned his location and survey, and had placed his warrant ,on other land.' In such case, the land was' universally ’considered as returning to the mass of vacant land, and becoming,like other vacant land, subject to appropriation. A person having no interest in the original survey, attempted to set it up against a subsequent' locator, under the proviso in the Act of Congress which has been stated. The Court said; “the proviso of that Act, which annuls all locations made on lands previously surveyed, applies to subsisting surveys; to those in which an interest is claimed, not to those which have been abandoned, and in which no person has an interest..” This survey has not been abandoned by any person having title to it, and the defendants still have an interest in it.
 

 We think there is no error in the decree, and that it ought . to be affirmed.