Hitchcock, C. J.
There is no little difficulty in extracting from the bill of exceptions in this case, as signed by the judges of the court, such a statement of facts as will present the question argued by the counsel for the parties, and upon the solution of which depends the disposition of the case. Before attempting to do this, however, it may be proper to say, that the motion overruled by the court of common pleas, and which decision is claimed to have'been erroneous, wTas made by the plaintiff in an action of ejectment, after a verdict against him. Such motions are rarely sustained in this form of action, especially where, as in the present case, the verdict is for the defendant. Notwithstanding this rule of practice, however, we have examined this case with a view to ascertain whether, in fact, the finding of the court below was against the evidence.
To sustain his action, the plaintiff offered in evidence a patent from the President of the United States, to Carter B. Harlan, for the land in controversy, bearing date the 12th day of March, 1889. This patent was based upon an entry and survey made in February of the same year in which it bears date. The plaintiff further proved the death of Carter B. Harlan, and that his lessors were the heirs of said Harlan, and rested his ease.
On the part of the defendant it was insisted that this patent to Harlan, as well as the entry and survey upon which it was based, were void, under the act of March 2, 1897. (Ohio- L. L. 134.) This act gives further time to those holding Virginia military land warrants to locate the same, but contains the following proviso : “ That no locations-as aforesaid, wfithin the above named tract, shall, after the passing of this- act,, be- *50 made on tracts of land for which patents had been previously issued, or which had been previously surveyed ; and any patent which may, nevertheless, be obtained, for land contrary to the provisions of this seetion, shall be considered as null and void.”
To maintain the position that this patent to Harlan of the 12th March, 1839, is void, the defendants introduced a copy from the books of the principal surveyor of the district, showing that on the 10th of August, 1787, an entry, No. 841, of 1,000 acres, was made in the name of Thomas Shaw, assignee, covering the land in controversy. This entry purports to have been made upon military warrant No. 289, and was surveyed on the 14th March, 1794.
If this is a valid and subsisting survey, and the defendants connect themselves with it, so as to enable them to set it up by way of defense, then the finding of the court below was unquestionably in accordance with the law and facts of the case.
On the part of the plaintiff, it is insisted, first, that the defendants do not connect themselves with this survey, and in the second place, that the survey itself is absolutely null and -void. Do the defendants show that they have any interest in, or connection with, this survey ? It appears from the bill of exceptions, that in 1831, five hundred acres, or one half of this survey, was sold for taxes to one Warren Sabin. That sub.•sequently' the auditor of the county, in pursuance of the sale, ■convoyed the land to Sabin, who went into possession. Subsequently the land was sold as Sabin’s land, by the sheriff of the ■county of Clinton, on execution against Sabin. The defendants claim title under a conveyance from those who purchased at sheriff’s sale, either mediately or immediately; and are in possession. They are in possession claiming title.
■But, say the counsel for plaintiff, this tax sale was irregular and void, and therefore conferred no right upon the defendants. It may be so,, but -who has the right to contest the title of the defendants ? Certainly an entire stranger cannot do it, they being,in possession. And if, under the law of 1807, the patent *51 under which the lessors of the plaintiffs claim, is void, they are m the same situation with any other stranger. If a mere intruder could not set up the survey of Shaw to defend against the patent of the plaintiff, neither can those claiming under the patent, that being void, question the title of those in possession of the survey under a tax title. The validity of this tax sale can alone be questioned, in a suit between Shaw, in whose name the survey was made, or some one claiming under him, and the tax purchasers. Or, perhaps it would be more proper to say, in a suit between the rightful owner of the survey and the tax purchasers. In the opinion of the court the defendants so far connect themselves with the survey of Shaw, that they have the right to avail themselves of that survey to defeat the patent of the plaintiff, if that was a subsisting survey at the time the survey of Harlan was made, and the patent issued.
The validity of that survey is contested by the plaintiff, and whether it be a valid survey is the only real question in the case. We do not suppose the mere act of surveying land in the military district, without authority of law, withdraws the land so surveyed from location, by one who holds a military warrant unlocated. In order to avoid a subsequent patent, the survey must be by one or for one having some right, or color of right. It must be made in good faith. Under such circumstances, although it may be informal or irregular, its owner will be protected.
In the case under consideration it is claimed that survey No. 844 is void and of no effect, because it purports to have been made upon warrant No. 289 ; and it is said that this warrant has been fully satisfied by other lands, and this fact is proved by the introduction of patents which have been issued for surveys made under the warrant. True, it does not appear explicitly whether the entries, pursuant to which these surveys were made, were prior or subsequent to entry No. 844. But perhaps this is not very material in the view which we take of the case.
From copies introduced from the books of the principal sur veyor of the district, it seems that Thomas Shaw, as assignee, *52 held a military land warrant for 4666-J acres of land. This warrant was number 285. From a book which is called, I be lieve, a lottery book, it appears that this warrant was so divided or apportioned, that 1,000 acres was to be, as was intended, as number 12,1,000 acres as number 27, 1,000 acres as number 884, and 1666J acres as number 1842. How thi3 was done I do not undertake to say, but merely state the fact.
Number 12 was entered on the 20th July, 1784, referring to the right number of the warrant, that is, No. 285, and was surveyed in 1785. This entry was made, as I suppose, in Ken tucky, and was for one thousand acres. Number 27 was entered on the same day, and also surveyed in 1785. In this entry and survey the quantity is one thousand acres, and the number of warrant 285. No. 1342 was entered 17th August, 1787, for 1666-| acres, and was surveyed by John O. Bannan, deputy surveyor, the next day. In this entry the number of warrant is 285. Here we'have three entries and three sur veys in Shaw’s name, upon warrant No 285, containing, in the whole, 2666f acres, and leaving 1,000 acres of the warrant still to be located. On the 10th August, 1787, No. 844 is entered in the name of Shaw, as had been the other entries referred to, and containing 1,000 acres of land. This entry was surveyed by John O. Bannan. The entry, however, purports to be made upon warrant No. 289, instead of 285, and covers tho land in controversy. There is nothing in the case to show, that the last thousand acres called for in the warrant of Shaw, was ever located unless by this number 844. From 1794 until 1839, a period of nearly fifty years, no one, so far as we know, ever undertook to interfere with this survey. Now under these circumstances, we cannot doubt but that this entry was intended to be made — was in fact made — upon warrant number 285, and that the insertion of 289 was a sheer mistake.
If so, did Shaw acquire no interest in the survey ? It seems to us that he did acquire an interest, and that the mistake might have been corrected. Indeed, we believe that upon a proper representation being made to the government, a patent would *53 have been issued. This, then, was not a valid survey — a survey made without color or pretense of right — but was such a survey as under the law of 1807, withdrew the land from subsequent location. Counsel seem to suppose that by so deciding, we undertake to correct a mistake in a court of law. Jt is not so. All that the court below said, and all we undertake to say is, that this survey No. 844, made as it was, is saved by the proviso in the act of 1807. And in so deciding, it seems to us that we are sustained by the decisions of the Supreme Court of the United States.
In the case of Jackson v. Clark and Ellison, 1 Peters 628, that court gives a construction to the proviso of the act of 2d March, 1807. In that case it is held that this proviso was not intended for the protection of valid and regular surveys alone, because these need no protection. But the clause was introduced for the protection of defective entries and surveys, which might be defeated by entries made in quiet times. The survey before the court in that' case, had been made upon a warrant which had been satisfied • by previous entries and surveys; still the court held that it was not therefore void, but for the purpose of defeating a patent, emanating upon an entry and survey made subsequent to the act of 1807, might be considered as a valid, subsisting survey, within the meaning and intent of that act. The survey upon which -the defendant relied in that case had been made in 1796, and the entry upon which the plaintiff relied, and in pursuance of which his patent was issued, was made in 1824.
It seems to the court that the facts of the case referred to were not mox-e favorable to the defendants, if as much so, as is the one now before this court; and upon full consideration we are of opinion that there was no error in the judgment of the court of common pleas, and that judgment is therefore affirmed with costs.