Gholson, J.
Independent of the effect upon it, of the claim or title of the defendants, no question is made as to the title of the complainants. The contention between the parties is, as to the validity of the claim or title of the defendants. If at the time the entry was made by Saunders, the ■entry and survey, No. 6780, made by Ross was valid and subsisting, then under the proviso in the act of congress of 1807, continued by subsequent acts, the entry, survey and patent of Saunders must be regarded as invalid.
The effect of the proviso has been considered in several . cases decided in the supreme court of the United States.
In the case of Taylor’s lessee v. Myers, 7 Wheaton, 23, the warrant on which a survey had been made, had been withdrawn and located on other lands. It was held that the proviso did not extend to such a survey. The court said, “ the powers of that act, which annuls all locations made on lands previously surveyed, applies to subsisting surveys; to those in which an interest is claimed, not those which have been abandoned, and in which no person has an interest.”
The case of Jackson v. Clarke, 1 Peters, 628, ivas one where the parties muüuig the entry and survey might, by pursuing the proper course, have made a lawful entry and survey. The -court after explaining how this might have been done, say : “ Their survey, then, was not an absolute nullity. It might have been supported by a court of equity.” . . . “ This was -not a fictitious, but an actual survey, made by a regular officer, for one owning the warrants on which the entry purports to be made, and having at the time, full power to give complete validity both to the entry and survey.” It was said of the conflicting surveys in that case : “ They are both surveys .made by the regular officers on military warrants'.”
The case of Lindsey v. Miller, 6 Peters, 666, was one in which an entry and survey had been made on a military warrant for services in the Virginia State line, when an entry and location could only be legally made on a warrant for services .on continental establishment. The court, after stating that *303 •the land was not liable to be appropriated by such a warrant, •proceed to say: “ By the act of 1807, any patent is declared to be void that shall be issued on an entry of land which had been previously patented or surveyed. This language is general, and literally applies to all surveys which had been previously made, whether made with or without authority. Could congress have designed by this act to protect surveys which had been made without semblance of authority ? If an intruder, without a warrant, had marked boundaries in a survey, •either large or small, would it be protected under the act ? When the object and scope of the act are considered, and other laws which have been enacted on the same subject, and the deed of cession are referred to, it would seem that much difficulty can not be felt in giving a correct construction to this provision. In making the cession, Virginia only reserved the right of satisfying warrants issued for military services in the state line on the continental establishment. Warrants of no other description, therefore, could give any right to the holder to any land in this district. In all acts •subsequently passed, giving.further time for the location of warrants in this reservation, there is a reference to the kind of warrants which may be located. And in the act of 1807, the officers and soldiers of the Virginia line on continental establishment, are named as entitled to land in the district. No act of congress passed, subsequent to the deed of cession, which enlarged the rights of Virginia to this district beyond •the terms of thecession. Longertimehasbeenrepeatedlygiven for locations, hut no new rights have been created. It would seem, therefore, to follow, that when the act of 1807 was passed for the protection of surveys, congress could have designed to protect such surveys only as had been made in good faith. They could not have intended to sanction surveys made without shadow of authority, or, which is the same thing, under a void authority.” 6 Peters, 675. “There can be no doubt that congress did intend to protect surveys which had ■been irregularly made, and it is equally clear that they did not design to sanction void surveys. A survey is void, unless añade under the authority of a warrant; and it need not be *304 Stated again, that the warrant under which the survey of the. defendants in the circuit court was made, gave no right to the holder to appropriate land north of the Ohio.” 6 Peters, 077-
So far, the principle applicable to the construction of the proviso of 1807, is clear — It did not extend to a case where there was no valid warrant, and when, on that ground, the entry and survey were void.
We come to a class of cases in which, though the entry and survey were held to be void, they were yet considered to be within the protection of the proviso. They are cases in which the invalidity of the entry and survey resulted from the fact that the party in whose favor they were made was deceased. But in these cases there was a valid warrant on which an entry and survey might have been made and a patent issued. The mistake was in taking the title in the name of the deceased, instead of his legal representatives.
In the first of these cases, Galloway v. Finley, 12 Peters, 264, 298, the case of Lindsey v. Miller, from which quotations have just been made, was referred to, and it was said: “ The location and survey were mere nullities; and the court justly held that congress did not, by the act of 1807, contemplate such claims, and that they were not within the purview of the act. But had the claimant been entitled to the satisfaction of his warrant in the military district, in common with others, for whom the goverment held as trustee, the case might have been very different, even had the entry and survey been invalid.”
The case of McArthur v. Dun, 7 Howard, 262, which was the case of an entry and survey made in the name of the assignee of a warrant who had before died, the entry and survey though void on that ground, were held to be protected by the proviso of 1807. This case was decided expressly on the authority of Galloway v. Finley. No reference was made to the case of Lindsey v. Miller. It can not be considered, therefore, as impugning the principle on which that case proceeded, or as showing that an entry and survey not professing to be-made on a real warrant, and where there was no warrant andao authority, would be protected by the proviso.
*305 The case of Stubblefield v. Boggs, 2 Ohio St. decided in this court, was the case of an entry made in the name of a deceased person, but there had been no survey. The court cite and admit the authority of Galloway v. Finley, and McArthur v. Dun, as showing that the proviso protects a survey or patent, though the grantee be dead, but hold that it does not extend to an unsurveyed and void entry.
It appears, therefore, that of the three cases, the first admits, and the others do not call in question or deny the principle so clearly stated in the case of Lindsey v. Miller, that the proviso does not “ sanction surveys made without the shadow of authority, or, which is the same thing, under a void authority.” Nor in either of the cases is the authority of Taylor’s lessee v. Myers, questioned, but on the contrary it is admitted in McArthur v. Dun, 7 How. 269. And we may well suppose, that on the authority of the case of Taylor’s lessee v. Myers, it was said in Niswanger v. Wallace, 16 Ohio, 557, 560, that “ no unlawful or unauthorized entry can give an equitable title. To be a valid entry and efficacious to hold the land against others disposed to locate it, it must be made by virtue of a Virginia military warrant still subsisting.”
In view of the principle to be deduced from the cases which have been cited, if at the time of the entry made by Ross in 1810, he might have made that entry upon the warrants and patent specified in the certificate of the surveyor, or upon any claim which they conferred, then any irregularity or even invalidity in the proceedings, would not authorize the subsequent entry of Saunders, and the provision of the act- of congress would avoid that entry. On the contrary, if Ross could make no legal entry, if he had no claim to lands in the district, the mere fact of an entry being permitted by the officer, could confer no right. It would be a case of want of power in the officer, and the validity of such an act is certainly open to the question as to “ power in the officer and fraud in the party,” U. S. v. Arredondo, 6 Peters, 691, 729. The authority of the surveyor of the Virginia military land district, was limited to a particular subject matter. He had not a gen- *306 eral poAver to dispose of lands, but only in a particular class of cases, and upon specified evidence — a military warrant. To bring a case within his power and discretion, it would not suffice to show a claim to a warrant, hoAyever just and equitable that claim might appear. His action upon any such claim would be beyond the scope of his authority. It is equally clear, that his authority would not extend to the case of a party who had surrendered to the State of Virginia a Avarrant which he once held, upon the ground that it would be just and equitable that it should be returned, or that another should be granted. The original grant of a warrant, or the return or reneAval of one surrendered, properly appertained to the jurisdiction and authority of the State of Virginia.
Assuming these principles to be correct, is the claim of the defendants brought within their operation?
The patent granted to Ross by the State of Virginia, purports to be in consideration of the warrants. They Avere delivered up to the proper authorities in Virginia, and have ever since remained in their possession. The patent, and not the warrants, was produced to the surveyor in Ohio. The effect and operation of the patent, if its verity be not questioned, showed that a grant of 1,000 acres of the unappropriated land of Virginia, had been made to Ross, in consideration of warrants, Avhich -thereby became extinguished and satisfied. Upon this patent, alone, the surveyor certainly could not act. Had he authority to enter into an inquiry for the purpose of contradicting the effect and operation of the patent, and of shoAving that the warrants, in whole or in part, were still valid and subsisting? As before stated, a mere claim on the State of Virginia, for a return or renewal of the warrants, could not be presented. The case requires that it might be shown, that the original warrants were still subsisting, and that.it was competent for the surveyor, in the absence of the warrants, to enter upon such an inquiry. The test of the jurisdiction of any officer, or tribunal, over a subject matter, has been said to be, the right to begin the inquiry. When this exists, Avhat occurs there *307 after, in the course of the inquiry, may be regarded as an irregularity.
If, after the acceptance of the patent from the State of Virginia, it appeared that a part of the land granted, could not be obtained on account of a prior interfering grant, might this be shown to any tribunal, or could the mere fact of such interference be regarded, without a showing, as continuing the life of the warrants, which were the consideration of the patent ? It would certainly be unreasonable to assume that the party could act a.s if he still held the warrants, without establishing, in some form, the fact of interference, and its extent. We are unable to find, from any practice or law, that this might.be done, or'that any authority was constituted to adjudicate upon the fact of interference, and declare its effect upon the warrants. So far as there is authority upon the subject, it shows the contrary.
In the case of Taylor v. Myers, 7 Wheaton, 23, 24, it is said: “ The question, whether a warrant completely executed by survey, can be withdrawn and so revived by the withdrawal, as to be located in another place, has never, so far as is known, been decided in the courts of that State (Virginia). In Kentucky, where the same law governs, it has been recently determined, that a warrant once carried into survey with the consent of the owner, can not be reentered and surveyed in any other place.”
Our own court, in the case before cited (16 Ohio 559), referring to this very question, say that the “ objection to bringing the warrant a second time into use, is not easily obviated, whether we regard the object and nature of the warrant, or judicial authority bearing upon the subject. It does not appear that any legislative acts of Virginia, or any decisions of the courts, have revived military warrants, after they had, by the emanation of a patent, become of no value, except in the character of evidence.”
A prior case cites and recognizes the decisions in Kentucky, and shows that it was the opinion of the court, that in the absence of express legislation, “ after a patent issues, the power of the party over his-warrant and location is gone.” *308 “ He has returned to the government his survey and warrant;” and the inference is clear, that without the consent of the government manifested in some legal form, he can not again act upon the warrant. Porter v. Robb, 7 Ohio pt. 1st. 206, 209.
In the absence of any legislative provision in Virginia, oi of proof of any practice permitting the withdrawal of a warrant carried into a survey and patent, we see no propriety in giving any effect to a fact shown in this case, that in the margin of the book of entries, opposite entry No. 70, there is a memorandum — “ 640 withdrawn and entered in 197.” By whom or by what authority this memorandum was made, does not appear. It is not certified to us, and does not appear to have been certified to the surveyor in Ohio, as the official act of any officer in Virginia. If made by, or under the authority of the surveyor in Ohio, the question would still recur as to his power to act in any such matter.
Finding no authority in the law or practice of Virginia, is there any act of congress which can be regarded as reviving a warrant carried into grant in that state, and allowing it to be located in Ohio? We have been unable to find any such act, and none has been pointed out. The acts which have any bearing upon the subject, contemplate action upon warrants not located, upon warrants produced to the surveyor. Act of congress, August 10, 1790, 1 Stat. at Large, 182; June 9, 1794, 1 Stat. at Large, 394; 1st Sec. Act of May 13, 1800, 2 Stat. at Large, 80.
The second section of the act of May 13, 1800, does contemplate action upon interfering claims, but very clearly, we think, does not include such a claim as the one held by Ross, in 1810. That section is as follows:
“ Sec. 2. That in every case of interfering claims under military warrants, to lands within the territory so reserved by the State of Virginia, when either party to such claims shall lose, or be evicted from the land, every such party shall have a right, and hereby is authorized, to withdraw his, her or their warrant, respectively, to the amount of said loss or eviction, and to enter, survey and patent the same, on any vacant land *309 within the hounds aforesaid, and in the same manner as other warrants may be entered, surveyed and patented.”
The interfering claims, upon which authority to act was conferred, were claims under military warrants, to lands within the territory so reserved by the State of Virginia. The lands here intended, were lands in Ohio, then being disposed of by the United States to satisfy warrants granted for military services by the State of Virginia, an interference in the location of which might well fall under the cognizance of officers acting under the authority of the United States. But it can not be supposed that authority was given to act upon interfering claims to lands lying within the limits of Virginia. With interferences in the grants of such lands made by the State of Virginia, the officers of the United States disposing of the lands in Ohio could properly have nothing to do, had no means of ascertaining the facts, and could not reasonably be presumed to have the requisite knowledge and ability to adjudicate as to any conflict of claim or title. We feel confident that the act of congress did not extend to any such case. And yet it seems highly probable that, under a mistaken view of the effect a.nd operation of that act, the surveyor acted in permitting the entry and survey of Ross, and in making the certificate under which the patent issued to Niswange-r.
It may be, that to the extent the land granted to Ross by the patent of the State of Virginia, was interfered with by the prior grant to Henderson, had a representation been made to the authority in that State competent to act upon the matter, it would have been just and right to grant a new warrant. No such course was taken. Indeed, it does not appear that any survey was had to ascertain the deficiency, and the evidence in this case only shows that it was supposed to be from 400 to 600 acres. We are not satisfied that there was in Virginia any officer or tribunal, or any authority except the legislature, that could have revived the warrants which were merged in. and satisfied by the patent. We are clearly satisfied, that the i urveyor in Ohio had no authority to act upon such a claim, id that his act in admitting an entry and certifying a survey *310 upon the claim of Ross, was beyond any jurisdiction or power vested in him, and void.
That a patent issued upon this certificate, the claim of Saunders being prior to its emanation, does not add any validity to the act of the surveyor, and is not to be regarded as appropriating the land, however it might be as to a subsequent claim. The right of those claiming under Saunders to relief notwithstanding the patent, is clear upon the authorities. Garland v. Wynn, 20 Howard, 6; Cunningham v. Ashley, 14 Howard, 377; Stoddard v. Chambers, 2 Howard, 284, 318.
We have disposed of this point, as presenting a new question in this court, and without reference to the effect, as an authority, of the case of Niswanger v. Wallace, in which it was held that the same entry and survey No. 6780, conferred no equity upon Niswanger. The court in that case, in terms decline to decide the point we thought it necessary for us to decide in this case; but the reasoning and argument of the court in that case very clearly lead to the conclusion we have reached. If the claim of Ross would have sustained an entry, then it might properly be regarded as creating an equity, notwithstanding an irregularity in the evidence which was presented to the surveyor. The argument of the court in Niswanger v. Wallace tends to show that the only reason why Niswanger had no equity, was because he had no valid subsisting warrant, but only a patent from the State of Virginia, on which the surveyor could not act as a warrant. The same reason equally shows that the entry under which Niswanger claimed, was void for want of a warrant or any claim upon which it was competent for the surveyor to act.
The other objection taken in this case to the claim of the defendants turns, not on a question of power in the officer, but of fraud in the party, and a decision upon it would require conclusions both as to matters of fact and matters of law. Upon the investigation of such a question, never pleasant, we do not feel that it is necessary to enter, as the point we have decided is conclusive of the case.
No evidence has been furnished as to the tax title of the defendant Gwynne, but assuming that the proceedings con *311 nected with the tax sale, in 1829, were regular, it must fail because there was, at that time, as we have decided, no valid appropriation of the land by an entry and survey. The land was not appropriated so as to be liable to taxation until after the entry of Saunders, in 1837. The taxes which have been paid since the time the lands became liable to taxation should be refunded, and we think the parties in possession are, entitled to claim for improvements.
As to the objection that the complainants could not proceed against Gwynne in equity, we think that, if valid, it has been waived by his answer. The parties interested are' all before us, and we think it proper to dispose of their different claims as presented in the pleadings, without turning the complainants over to another action, which, in view of the decision in this case, would be a mere matter of form, and involve unnecessary expense.
A decree may be prepared for the complainants, in accordance with the principles declared.
Brinkerhoee, C.J., and Peck, J., concurred.
Scott and Sutliee, JJ., dissented.