BOARD OF TRUSTEES OF THE OHIO STATE UNIVERSITY v. WESLEY SATTERFIELD.

1. ACT OF FEBRUARY 18, 1871, BY THE CONGRESS OF UNITED STATES, CONSTRUED.

The act of February 18, 1871, by the congress of the United States, ceding to the state of Ohio the unsurveyed and unsold lands in the Virginia Military District of Ohio, vol. XVI., General Statutes, p. 416, construed and *held :* That the cession covered all the title the United States had to and in these lands, and all it could convey.

2. ENTRY ON A VIRGINIA STATE LINE WARRANT.

The cession covered all unpatented lands held on surveys based on Virginia Military *State Line* Warrants, such warrants not being subject to location in the district, and entries and surveys made thereon being utterly null and void, and by the act of April 3, 1873, of the legislature of Ohio (70 O. L., 107,) plaintiff has the title to these lands.

3. STATUTE OF LIMITATIONS DOES NOT RUN AGAINST THE UNITED STATES OR THE STATE

Possession of these lands by the defendant and those under whom he claims for a period of ninety-two years will not avail him as a defense, as the title to these lands was in United States from March 1, 1784, to February 18, 1871, and the statute of limitations does not run and cannot be pleaded against the United States or the state.

4. THE DOCTRINE OF CAVEAT EMPTOR APPLIES TO A PURCHASER AT TAX SALE.

A tax title on these lands dating from 1819, on a tax deed made by the auditor of Adams county, Ohio, in 1830, does not estope the plaintiff, as the grantee of the state, from claiming these lands, as they have never been the subject matter of taxation, either as the property of the United States, the state, or the plaintiff; and in such case, the tax deed is void and nothing can be claimed under it. The auditor's deed does not purport to convey any title the state of Ohio had to this land, but simply whatever title the person had to whom the same was charged for taxes, and that being *nil* the tax deed amounts to nothing. The doctrine of *caveat emptor* applies to a purchaser at tax sale.

5. THE PROVISO OF THE ACT OF MARCH 2, 1897, PASSED BY THE CONGRESS OF THE UNITED STATES DOES NOT AID DEFENDANT'S TITLE.

The proviso of the act of March 2, 1807, 2 vols., U. S., p. 424, does not aid the defendant's title. The location is a void warrant, gave no title, legal or equitable, from the United States in the locator. The only effect of that proviso was to withdraw the land from location by any subsequent locator, whether the location was valid or void. It has the operation to exclude every person but the legal holder of the warrant used, from encroaching upon the land attempted to be appropriated by the first location. It in effect establishes a pre-emption right in favor of the first locator, while the district was open to location, to procure a valid warrant, and make a valid entry and survey in the land: *Price* v. *Johnson,* 1 O. S., 390, 397 ; but this right ceased as to defendant and those under whom he claims, in January 1. 1852. The plaintiff does not stand in the attitude of a subsequent locator as to the defendant, but is the grantee of the land from the United States. The only right the defendant now has in the land, is that of a *bona fide* settler under the act of February 13, 1871, if he can bring himself within its terms, and such right must be worked out under the plaintiff, the United States having parted with all title by that act.

6. DUTIES OF PLAINTIFF UNDER SEC. 4. OF THE ACT OF APRIL 3, 1873; 70 O. L., 109.

The duties of the plaintiff under sec. 4, of the act of April 3, 1873, vol. 70 O. L , 109, in surveying, dividing, numbering and platting these lands and reporting them to the land department of the state, are not conditions precedent to vesting the title in plaintiff, and the failure of plaintiff to do these acts cannot aid defendant's alleged title, or prevent a recovery by it.

ERROR to the Court of Common Pleas of Adams county.

This was a suit in ejectment in the court below by the plaintiff in error against the defendant in error, for the recovery of one hundred and thirty-one acres of land.

Plaintiff's claim was that this land was ceded by the state of Virginia to the United States, on March 1, 1874; by the United States to the state of Ohio, on February 18, 1871; and by the state of Ohio to it, on April 3, 1873.  70 O. L., 107.

The cession of March 1, 1784, by Virginia to the United States was absolute as to all lands claimed by that state northwest of the Ohio river, except that portion between the Little Miami and Scioto rivers, which was reserved by the state of Virginia for the satisfaction of her troops on continental establishment, provided the lands on the southeast side of the Ohio, therefore used for that purpose, were proved insufficient.  This territory between the Little Miami and Sciota rivers was thereafter designated as the Virginia Military District in the state of Ohio.  Very soon after the cession by Virginia to the United States it was discovered that the lands reserved by Virginia on the waters of the Cumberland river, and between the Green and Tennessee rivers, were insufficient to satisfy the bounties of her officers and soldiers upon continental establishment, and Virginia notified the United States that she would require the land between the Little Miami and Scioto rivers, so far as necessary, for bounties for her soldiers who had served for three years upon continental establishment.

The *modus operandi* of procuring Virginia Military Continental Land Warrants was briefly as follows:  The officer or soldier, his heirs or assigns, would obtain a certificate from his commanding officer; in the case of an officer the certificate was given by a general officer; or of a non-commissioned officer or private soldier by his colonel.  This certificate specified the time of service, or death of the party during service; that he had served the time required by law (three years), and the regiment in which such party served.  With this certificate the party holding the same would appear before some court of record in Virginia, and prove by his own oath, or otherwise, the authenticity of the certificate, and that he had never proved his claim to the land therein mentioned.  The clerk of the court entered this testimony on the certificate, and made an entry thereof in his order book, and had to send a list of the certificates so proven to the register of the land office of the state of Virginia.  The certificate was lodged with the register of the land office of Virginia, and thereupon that officer issued the warrant under his hand and seal of office, stating the quantity of land and the rights upon which it was due, and authorizing any surveyor duly qualified according to law, to lay off and survey the same.

The Virginia warrant holder would take his warrant to the office of the surveyor of the district, and there make an entry of the lands he desired to take up with his warrant, not being already entered or surveyed, in the book of entry of the surveyor.  With this entry he would have a survey of the entered lands made by the deputy surveyor of the district, and returned to the office of the surveyor.  Thereupon the surveyor would forward the survey to the general land office in Washington, upon which patent would issue to the owner of the survey making application therefor.

The steps usual to obtain title to land in this district having been noted, it will next be well to quote the act of February 18, 1871, entire.  It reads as follows:

"An act to cede to the State of Ohio the unsold lands in the Virginia Military District.

"Be it enacted by the Senate and House of Representatives of the United States in Congress Assembled.  That the land remaining unsurveyed and unsold in the Virginia Military District, in the state of Ohio, be and the same are hereby ceded to the state of Ohio, upon the conditions following, to-wit: Any person who, at the time of the passage of this act, is a *bona fide* settler on any portion of land, may hold not exceeding one hundred and sixty acres so by him occupied, by his pre-empting the same in such manner as the legislature or the state of Ohio may direct.

"Approved February 18, 1871."

Upon the construction of this act depends the title to this land. If the land in controversy be "unsurveyed" land within the meaning of the above act, the plaintiff holds the title and will prevail; if it be "surveyed" land, then the defendant has the title and will prevail. The title to this land was in the United States from March 1, 1784, until February 18, 1871. The question is, did it on the latter date pass to the state of Ohio, or did it remain in the United States for the benefit of the owner of the survey? Plaintiff claims that on February 18, 1871, this was unsurveyed land, and passed to the state of Ohio by the act above recited, and by the state to the plaintiff by the act of April 3, 1873, 70 O. L., 107.

The plaintiff's petition was the ordinary one in ejectment.

The defendant, for answer, first denied all the allegations of the petition except that he was in posession of the land.

The second defense of the answer was that the land was on May 12, 1788, duly entered by one Joseph Hoffman, on a legal and valid military warrant. That the entry was recorded on November 20, 1791, in the surveyor's office of the Virginia Military District of Ohio, and that on June 27, 1792, said entry was duly surveyed as No. 1515, and recorded on the books of said surveyor, in the name of Joseph Hoffman, and that the defendants and those under whom he claims have remained in possession of said land ever since the making and recording of said entry and survey No. 1515.

Also that the defendant and those under whom he claims, have made lasting and valuable improvements on the land. That his entry and survey were valid, and he asked judgment.

The reply joined issue upon the answer. The record disclosed the entire evidence given in the court below.

The case was tried in the common pleas before the Hon. D. W. Loudon, judge, without a jury, and judgment was rendered for the defendant. The plaintiff filed its motion for a new trial, took a bill of exceptions containing the entire evidence, and has filed the petition in error, now under consideration, to reverse the judgment of the court below.

The evidence showed that on the 7th of March, 1783, a warrant was issued to one Joseph Hoffman for one hundred acres of land for service in the Virginia State Line for three years, by the recorder of the state of Virginia.

Upon this warrant, Joseph Hoffman made an entry of this land on May 12, 1788, upon the books of the surveyor of the Virginia Military District of Ohio. On the 20th of November, 1791, a survey upon this entry was made in the name of Joseph Hoffman, and recorded June 27, 1792.

It also appears that on March 12, 1797, one Joseph Wright took out of the office of the Surveyor of the Virginia Military District (then Col. Richardson), the official papers; but there is no evidence that he ever applied for a patent for the land, or that any patent therefor was ever issued. It also appears that warrant No. 1885, Virginia Continental Line, for 233⅓ acres, was issued to William Haley, and located in the name of John Coleman in survey No. 2,770, in Highland county, Ohio.

The land was entered on the tax duplicate of Adams county, Ohio, in the year 1819, as the property of an unknown owner, and on December 8, 1828, was sold by the auditor of Adams county, Ohio (Joseph Riggs) to William Phillips for $950, previously unpaid taxes. The deed from Joseph Riggs, auditor of Adams county, Ohio, was made to William Phillips, March 6, 1830, and directly afterward recorded. William Phillips died seized of this land intestate some time prior to 1873, and in that year his heirs sold the same in partition, and F. D. Bayless became the purchaser. In 1875 Bayless conveyed the land to the defendant.

The foregoing were all the facts in the case necessary to its determination.

On behalf of the plaintiff it was argued that the validity of defendant's entry and survey depended upon the warrant used in making the same. If the

warrant could not be located in the district; if the locator of the land did not own the warrant, or if he had no authority to locate it, or if the warrant had already been satisfied, the entry and survey in either case was invalid and void. In this case the warrant was not subject to location in the district. Virginia had set apart lands south of the Ohio river for the satisfaction of the state line warrants issued by her, and the warrant in question could only be located on these lands. The lands in the Virginia Military District of Ohio were only subject to be located by warrants issued by the state of Virginia for services in Continental Line. Wallace v. Saunders, 7 O., 173, 177. The warrant in question not conferring upon the holder the right to locate land in this district, the entry and survey were absolutely void. Lindsey v. Miller, 6 Pet., 666; Miller v. Kerr, 7 Wheat., 1. Hence, the land was unsurveyed on February 18, 1871, and the title passed by that act to the state of Ohio, which by the act of April 3, 1873, gave its title to the plaintiff.

First—On behalf of defendants, it was argued that twenty-one years' adverse possession gave them title, and that in this case there had been over eighty years' adverse possession.

Second—That the tax deed from the state of Ohio could not be attacked, the law in force at the date of sale providing that the tax deed should vest in the grantee, his heirs or assigns, a good and valid title, both in law and equity, and to be received in all events as *prima facie* evidence of a good and valid title in grantee, his heirs or assigns. Chase's Statutes, 1812.

Third—That under the doctrine laid down in Jackson v. Clark, 1 Pet., 628, the plaintiff was to be regarded as a subsequent locator, and the defendants' entry and survey were protected by the proviso of the act of March 2, 1807, extending the time for locating warrants, which provided that no locations should be made on tracts previously surveyed.

Fourth—Defendants claimed that plaintiff not having had this land divided, surveyed, numbered, appraised, and reported to the land department of the state, as prescribed in the fourth section of the act of April 3, 1873, 70 O. L., 109, could not claim the land.

Plaintiff argued in reply: 1st. That as the title to this land was held by the United States from March 1, 1784, till February 18, 1871, and from the latter date to April 3, 1873, by the state, no statutes of limitation had any application to the case. Lindsey v. Miller, 6 Pet., 666; Gibson v. Chotteau, 13 Wall., 92; Oaksmith v. Johnston, 92 U. S., 343; Burgess v. Gray, 16 How., 48; Jourdan v. Barrett, 4 How., 169.

Second—As to the tax deed, plaintiff claimed that the land was not the subject of taxation while the property of the United States; McGoon v. Scales, 9 Wallace, 23; nor while the property of the state; Chase's Stat., 1802; Swan's Stat., 1841, p. 907; Swan's Stat., 1854, p. 924; Swan & Critchfield's Stat., 1441; Rev. Stat., 1880, sec. 2732; nor while the property of plaintiffs; same statutes. Hence, this land never having been the subject of taxation, the tax title is utterly null and void.

Third—That the doctrine laid down in Jackson v. Clark, 1 Pet., 628, has no application in this case. That plaintiff is not a subsequent locator but the assignee and grantee of the United States, and the effect of the act of February 18, 1871, was to convey all the right and title of the United States in and to this land, and other unsurveyed lands in the district, to the state, subject only to the right of actual settlers to pre-empt under the laws of Ohio. That in making the grant the United States intended to, and did, save only the rights of those named in the grant, and intended to leave all former rights and titles, if any, to be perfected under the laws of Ohio. That the proviso of the act of March 2, 1807, as interpreted in Jackson v. Clark, *supra*, was simply to protect the first locator from interference by subsequent locators, and if he had an invalid warrant, a defective or irregular survey upon his first location, to enable him while the district was open to location, to obtain a valid warrant and make a valid

entry, and survey upon his original location. Jackson v Clark, *supra*, simply declares, that the first locator shall have the privilege and right to make his location good during the time locations can be made, and that no other locator shall be permitted to interfere with such right or privilege. But Jackson v. Clark, *supra*, did not undertake to protect void surveys, but only those that were voidable. A survey founded on a State Line warrant was absolutely void, and any subsequent locator could go upon the land and locate it. Miller v. Kerr, 7 Wheat., 1; Wallace v. Saunders, 7 O., 178.

The view we have expressed as to the proviso of March 2, 1807, is the language of the court in Price v. Johnson, 1, O. S., 390, 393. In Lindsey v. Miller, 6 Pet., 666, it was held that the proviso of the act of March 2, 1807, did not protect void surveys. In Latham v. Oppy, 18 O., 104, it was held that surveys upon warrants which were not granted for military services in the Virginia Line upon continental establishment, were not protected by the proviso of the act of March 2, 1807.

In Coan v. Flagg, 38 O. S., 156, Coan attempted to argue the proviso of 1807, to protect his survey against the grantee of the Ohio State University; but no consideration whatever was given to the argument by the court. The importance of this case is this: That it is the first time the circuit court of Ohio has been called on to construe the act of February 18, 1871. The supreme court was asked to do it in Coan v. Flagg, 38 O. S., 156, but evaded the question, and the supreme court of the United States will be called on to construe it in March next, when the same case of Coan v. Flagg, *supra*, will be reached by it. Hence, the decision of this court in construing the act of February 18, 1871, will be of great interest to the Bar in the Virginia Military District of Ohio, and to all parties in that district whose titles may be affected by that act. BRADBURY, J.

First—As to the tax sale. The state or its grantee is not estopped by the tax sale. The auditor's tax deed did not attempt to convey any title the state of Ohio had to this land, but simply whatever title the person had to whom the same was charged for taxes, and the doctrine of *caveat emptor* applies to the purchaser at tax sale, his heirs and assigns in this case. The person to whom the land was charged on the tax duplicate had no title, and none could be conveyed by the auditor. The land was not subject to taxation as the property of the United States.

Second—As to the statute of limitations. The statute of limitations does not run as against the United States, or the state. The statute of limitations, however, does apply to the plaintiff, and began to run against it on the third day of April, 1873; but such statute has no application to this case, as it will not be a bar till twenty-one years after April 3, 1873.

Third—The land in question was not subject to location upon a Virginia State Line warrant, and the surveyor in making the survey was a trespasser, without any authority whatever. His act in making the entry and survey was utterly illegal, null and void, and the warrant, entry and survey conferred no title whatever on the owner of the entry and survey.

Fourth—The proviso of the act of March 2, 1807, has no application whatever to a case of this kind. It could not protect a survey utterly void, and by that proviso Congress did not intend to clothe the occupant or owner of the survey with any title against the United States or its grantee, but only gave the first locator a pre-emption or right to a new and valid location as against any subsequent locator as stated by Judge Ranney in Price v. Johnson, 1 O. S., 397. This right ceased when the district was closed against location, and was of no effect as against the United States, or its grantee.

Fifth—The legal title to this land was in the United States on February 18, 1871, and by the act of that date by the Congress of the United States, ceding lands in Virginia Military District in the state of Ohio, was ceded to the state of Ohio.

The legal effect -of the act of February 18, 1871, was to the part of the United States to convey to the state of Ohio all the title it had, or could convey, to all lands in the Virginia Military District in the state of Ohio, and the tract in controversy was by this act ceded to the state of Ohio. The only right the defendant in error has if any in the land is that of a *bona fide* settler, as stated in the act of February, 1871, and he will have the right to pre-empt under that act and under the act of April 3, 1873, of the legislature, if he is in a condition to bring himself within the terms of such pre-emption.

' Sixth—The claim that plaintiff could not maintain the suit because it had not caused the land in question to be surveyed, numbered, appraised and reported to the land department of Ohio, as required by the fourth section of the act of April 3, 1873, is untenable.

These duties imposed on the plaintiff by law are not conditions precedent to the vesting of the title in the plaintiff by the state, and do not affect the title of plaintiff, or its right to recover herein.

Judgment reversed, and cause remanded to the court of common pleas for a new trial.

N. W. Evans & Ducan Livingstone, of Portsmouth, for plaintiff in error.
J. M. Wells & T. J. Mullen, of West Union, for defendants.